Good morning, Your Honors. My name is Robert Powell, appearing on behalf of Mr. De La Cruz. This case involves a reasonable fear hearing with respect to an application for asylum or withholding of removal and protection under the Convention Against Torture. The reasonable fear hearing is a preliminary or screening hearing that occurs if the immigration judge finds that there is reasonable fear, then the applicant will be referred to a full hearing for withholding of removal or torture protection. If there's no reasonable fear, then the applicant is returned to the Department of Homeland Security so he can be deported without any further hearing. The issue in this case is whether Mr. De La Cruz has a quote reasonable fear, so it's not a question about the merits of the case at this point. It's just a screening hearing to see whether there is a quote reasonable possibility that he may be approved. We think that we submit that the immigration judge's decision is incorrect and should be reversed primarily on two different grounds. First of all, under the circumstances of this case, we believe that the follow the board's decision in matter of MAM. That's the board's precedent decision about what to do when there are indicia of mental incompetence or cognitive impairment. Second, and independent of that argument, we think that the immigration judge, substantively, the decision is not correct given the record, that the finding of no reasonable fear is not supported by substantial evidence in record. First, Mr. De La Cruz maintains that the immigration judge erred by failing to follow the matter of MAM under the circumstances of this case. I guess I would like to make a comment about this court's decision that came out two days ago in Alvarado Herrera regarding the nature, which explains, I think in relevant part, explains the nature of the immigration judge's hearing in the reasonable fear context. Alvarado Herrera basically holds, in relevant part here, says that the reasonable fear hearing by the immigration judge is more in the nature of an appellate review of the decision made by, previously made by the asylum officer. And the court holds that there's no right to present evidence, there's no right to a full hearing in front of the immigration judge at this stage. And so that may have a bearing on whether or not the matter of MAM applies in reasonable fear proceedings. We submit that even if matter of MAM does not apply in general all the time, suppose, for example, the immigration judge decides that she's not going to hear any testimony at all, all the immigration judge is going to do is review the asylum officers, the evidence previously submitted. In that case, perhaps a matter of MAM does not apply, perhaps. But in any event, in the context of this case, we submit that it should be applied because the immigration judge started taking testimony from Mr. de la Cruz and was seeking from him relevant information. We submit that even if in general, Mr. de la Cruz does not have the right to submit evidence or testify, if the immigration judge decides to go forward and start taking testimony, then at that cognitive impairment, the immigration judge really has an obligation under matter of MAM to do something further. May I ask you two questions, Mr. Paul, with respect to MAM. The first would be, as you acknowledge, it hasn't been applied in this kind of a circumstance. Would that call for a remand for a determination by the agency to make that extension rather than the court? And then the second goes to your more substantive argument that you just made about the IJ asking questions and getting into the mental competency issue. But it seemed to me about MAM talks about the agency's obligation to provide information, and yet the fear proceedings are non-adversarial and you don't necessarily require DHS's party. So it seems like there is some collision between the reality and then what MAM might require. I'd appreciate your comment on that. Yes. So regarding the first about whether the court should make or can make a determination or whether the case should be remanded back to the immigration court for further consideration, I suppose, as to whether as to Mr. Delacruz's competence. I don't think we would not submit on this record that the court should make that determination. We believe the appropriate result in this case with respect to Mr. Delacruz's competence would be to remand it back to the immigration judge for further consideration and for basically following the requirements of MAM. With respect to the second question... But on that point, just one further clarification. That would, of course, presume that MAM is applicable here. Do you think that the applicability or the scope of MAM is something that should be determined on remand also? Well, our argument would be that MAM applies. MAM does not provide specific guidelines about what exactly the immigration judge is supposed to do. It, I suppose, allows some leeway as to and some discretion for the immigration judge. It does require further investigation, such as obtaining medical records. Again, MAM is not clear exactly what the judge has to do. What we would submit is that the case should be remanded to the immigration judge for application for the judge to follow MAM to extend its guidelines. Again, I think that would leave some discretion to the immigration judge as to what she would think would be the appropriate information to obtain to make that determination as to whether or not Mr. Delacruz is competent or not. With respect to that second question about whether DHS has an obligation to submit any documentation, because we are, as you mentioned, in different proceedings where DHS is not represented by counsel. Nevertheless, I think what the immigration judge is obligated to do under MAM, one thing that the immigration judge is obligated to do under MAM is to request DHS to produce the records. I suppose, alternatively, if DHS is not technically being represented, could request Mr. Delacruz's counsel to get those records, but that was not done either. The immigration judge just dropped the issue and didn't follow up on it. Well, one argument may be, too, in response to that, while the counsel should have done it, why is it the immigration judge's obligation when you don't have DHS at the table? Yes, so I think there are a couple in response to that. First of all, there's another board decision, precedent decision, that's cited in the briefing, matter of JSS, which indicates, which holds, that neither party has the burden of proof on this issue of competency. That it's the responsibility of the immigration judge to, where they are in DHS, it's the responsibility of the immigration judge to develop the issue, get the information that's necessary to make a decision. I would also point out that in the two Ninth Circuit decisions that deal with MAM, the matter of Campos Mejia and Calderon Rodriguez, in both of those cases, the non-citizen was represented by counsel, and the court, in effect, recognized that it was not the responsibility of counsel to produce those because the immigration judge failed to resolve the issue, failed to inquire into the issue. The immigration judge was in error, and the court reversed the amendment in both of those cases. I do also want to talk about the substantive decision that the immigration judge made, which is independent of the MAM argument. If you look at the record, we submit that the immigration judge's finding of no reasonable fear is not supported by substantial evidence. Your client was able to return to Peru on three occasions, two of them unmolested, one of them where he had some problems and local police came to his assistance. That's true, isn't it? Not exactly. He was attacked, apprehended, apparently in an attempt to kidnap him. He did scream out, police came by, and then apparently when the police came, the attackers ran away, it's also, I think, important there that he did ask the police, he basically told them the police, the perpetrators ran away into this house, and the police decided they weren't going to pursue or do anything about it. So, yes, I wouldn't say that the police really came to his assistance. I think really what the record reflects is that police came and these people were scared away, and then the police refused to chase the perpetrators. What evidence is there in the record of past torture of your client? The evidence there is past persecution of Mr. Delacruz, and that, we submit, is evidence from the application that was filed by his father. There's also a letter in the record, I think it's on page 66 of the EOIR record, a letter, this is from March of 1997, a letter from the municipal leader, I think the lieutenant governor of the area where they were living, that specifically refers to, well, Mr. Delacruz's father and his family, and specifically names Mr. Delacruz as a person who has been, as a child, persecuted, subject of persecution. So, yeah, the issue of torture, of course, there wasn't any, when the original application was filed by his father, the convention of torture, the convention against torture was not being implemented at that time, and so there's no discussion of torture at that time, but there is evidence that Mr. Delacruz was persecuted as a child. That's also, we submit, consistent, it needs to be taken into account in light of the Rusak case that the 9th Circuit issued. The other very important point is that just two years, well, at the time of the hearing two years ago, in 2017, I believe in October 2017, Mr. Delacruz's cousin was attacked and killed, and in the context of that incident, it was quite clear that the attackers were still interested in Mr. Delacruz and his family. They were asking questions about his family, where is his family, so that even recently indicates that Mr. Delacruz and his family are subject to persecution, perhaps torture. After all, his cousin was killed. If that had been Mr. Delacruz instead, he presumably would have been determined that your client failed to establish a nexus between the cousin's death and his claim. What's your response to that? First of all, we do not have to establish a nexus at this point. All we need to do is establish a reasonable possibility. Second point is that- Protected ground would be family, at least family in this context. Very clear that this, at least from the evidence that we have so far, that the cousin was attacked because of his family relationship. There's at least a reasonable possibility that if we go to a full hearing and get additional evidence that we would be able to show persecution, or I think that you've got your time is ticking down, Mr. Pazzo. I suggest you reserve the remaining time. Thank you. Your honors, and may it please the court, my name is Richard Kelly representing the Attorney General. First, the petitioner has not shown that his substantive claims are anything other than fear and also deny his due process claim for failure to show prejudice. Specifically with regard to the substantive claim, I want to address his point about past persecution. That's not the standard here. The standard is a reasonable possibility of torture or future persecution. So there's no rebuttable presumption of past persecution like when a petitioner is of removal. This is just a screening procedure to comply with treaty obligations which mandate the U.S. not to deport individuals to countries where they will be tortured in the future. But I think critically here, it's speculative because the petitioner ultimately spent 13 years in Peru after the alleged persecutory incidents against his father and was never harmed. He never had any direct contact from the Shining Path. He sort of kind of points to his cousin's death. However, it's speculative as determined by the immigration judge. The petitioner heard about this event from his cousin's sister who in turn heard it from the cousin who heard it, something about the father, the petitioner's father from the persecutors. That in itself is not enough to establish a claim. And then to the extent that he suggested he doesn't have to establish nexus to a protected ground, well that's not true because persecution, the definition of persecution includes nexus to a protected ground. So I believe that substantial evidence supports the agency's conclusions in that regard. If your honors have no further questions about the as I stated and as petitioner just conceded, it is unclear if MAM applies in the reasonable fear context. And your honor is correct that it is really a question for the agency whether the full extent of matter MAM applies. But I don't think the court really needs to reach that issue here because first aside from not showing prejudice, I think Alvarado Herrera versus really instructs the court that we should be looking at the asylum officer's record first to judge if he had a reasonable opportunity to present evidence. And looking at the transcript, we know that he stated that he was taking medication for anxiety and depression, that's on page 81 of the IJ record. We know that he answered that he was feeling well and that he understood the court's and interpreter's questions, that's 81 and 88. We also know that he's been represented by counsel since he was detained on July 30, 2019. That's on the record of proceedings of page 44. So he was represented by counsel for about five months until his reasonable fear review proceeding. All he really had to do to get his medical records was submit a request to the medical detention facility if he wanted to submit that. Counsel, on that point, forgive me for interrupting, but on that point, I think opposing counsel's right. The burden really isn't on either of the parties. I think we've said it's really the courts. This is something we look to the court for. And in this case, you read the record a couple of ways, but it seems, and part of this gets lost in appeal, but because we're not there in the hearing room or in the time of the interview, but there's this comment that's made by counsel was sort of speaking in code about maybe there's a concern about Franco class membership, which I understand to be a signal that the petitioner's counsel was concerned about competency issues. And because the judge then responded by ordering the records, and we do know this person had been in detention for 30 days at that point and reported getting meds every day. So there's going to be some record, presumably at least, of those medications being delivered or not, right? Shouldn't we be very concerned that there was no follow-up? It just gets dropped. So to the extent that the inquiry was triggered, I'm not really second-guessing. It seems to me that there was a trigger. What about the fact that there was no follow-through? Well, Your Honor, I want to first kind of just address the premise of my question about DHS's JSS, which the petitioner cited to requires DHS to produce this evidence. But in this case, as you know, DHS happened to be present and there was an order entered, get me the records, right? That's what happened here. And then no follow-through. Okay. And then I agree, Your Honor. The transcript looked as if she would... I wouldn't I'm not sure. I think it could be reviewed as a request. But if we look at the record of that first hearing, we see the IJ directing the petitioner's counsel to go to DHS and ask for various documents, such as the I-213, such as previous immigration history. So we know that there was likely some sort of conversation between the two parties, but that's not part of the counsel. In terms of dropping the ball, this is an obligation that really primarily rests with the court. Right. So I'm not I'm not concerned. And after the fact, you know, we recognize that things get lost. Sometimes there's conversations that aren't in the record. But but the record is what it is. Right. And the obligation was triggered, meaning the concern. What I mean is the concern was triggered by somebody in a position to be watching for this. And then, again, without pointing fingers, what we've got is there's no follow through. Correct. Well, Your Honor, again, it's the petitioner hasn't shown what was in those medical records that would have affected the nature of his proceedings. The petitioner was clearly able to understand the nature of his claim. He gave his immigration history. Hold on. Hold on. Can I forgive me? But so are you going to prejudice now? Are you speaking to the prejudice prong of a due process claim? Is that where your position is? Right. That would that would speak to prejudice. But my answer is that. Correct. We don't really know what happens, why the ball was dropped by either parties. But again, we don't know what the obligation you phrase it as an obligation. But in the due process cases before a matter of MAM, the court has always found that there was no error where an incompetent person was represented by counsel. I'm just trying to I'm really trying to figure out assume it's not due process, but it's agency procedure where no prejudice is required. Would that require a remand here? I mean, if we agree with you that the due process, which requires prejudice and you can't necessarily get over that hurdle, you still have the agency procedures question, which doesn't require prejudice. How do you characterize that? Well, we would first we would first have to decide whether those procedures apply to the reasonable fear context. But for the reasons discussed in Alvarado Herrera, it's very likely that those procedures don't apply in the same context. Now, correct if the court certainly has the ability to remand on that question. But I just just am wondering from this record. I mean, there's clearly nothing here that would indicate anything to do with his ability to understand anxiety and depression. But he testified himself that he felt fine. He understood all the questions. So it's just I question whether this is the right vehicle for the IJ to sort of come up with procedures when the person did not. He had all the safeguards required by the agency procedures. In matter of MAM, he had representation from counsel. He had additional time to present evidence. In his reply brief, he talks about how, oh, maybe the agency could have had the father testify. Well, the father submitted a letter on page four of the record that didn't really add any substantive details of the claim, but he still had an opportunity to kind of gather this evidence. So is he detained at this point? No, Your Honor, he was released. Yes. But again, I think that Alvarado versus Garland is instructive and it is definitely a question for the agency. But I just don't see how the petitioner has alleged really any prejudice because his due process or his sorry, his substantive claims are just very speculative. And also he was afforded the same safeguards contemplated by the agency. And the cases he relies on are all cases like matter of JSS that are in the context of 240 proceedings, such as Calderon Rodriguez versus Sessions. And all those cases also had very strong indicators of persons with mental illness, which required necessarily more due process, more procedural protections. So I think that between the two records here, I think the court should really focus on the asylum officer record, too, according to Alvarado-Herrera versus Garland. And essentially, matter of MAM would have been substantially complied with here. So I don't think the court really needs to answer that question. Counsel, I noticed in the record, this is a bit off point, but I did notice in the transcript that there is a mention of petitioner having a child with who suffers from autism. And I just wondered, was there any follow up about an application for cancellation anywhere? Is that anywhere in the record? Oh, well, Your Honor, he wouldn't be eligible with a reinstated order. Because he's previously removed. Right. Yes. He was removed in 1998. So he only had these these released. I don't believe there was any mention of him, of whether he ever submitted a motion to reopen. But that is certainly a possibility if he wishes to pursue that. As far as you know, he has not. Is that right? He's not. Sorry. I said as far as you know, he has not. Is that right? At this point, he has not. Correct. As far as as far as I know, the Petitioner's Counsel knows. Yeah. So, Your Honor, if Your Honors have no further questions on either issue, I submit the rest of my time. Thank you. Thank you. Mr. Paul, you have some, well, very little rebuttal time. Why don't we put a minute back on the clock so you have some real rebuttal time? Thank you, Your Honor. Thank you. And I just have a comment about, well, the government's argument that the claim is substantively just speculative and so shouldn't pass over the reasonable fear hurdle. I would just on that point out that, first of all, that Mr. Dela Cruz was found to be credible. So his testimony about what happened with his cousin and the attackers looking about his family and so on has to be accepted as credible. In terms of substantiating a claim for, you know, to prove that there is actually a nexus, you know, that really goes to the merits. It shouldn't come up on the on this stage where the question is really only is there a reasonable possibility or, you know, a 10% chance that ultimately he'll be able to show the nexus for past persecution. I think Alvarado-Herrera, this recent Ninth Circuit decision, is instructive on that as well, which indicates that, you know, the reasonable fear hearing is just an abbreviated hearing, a quick screening, and the applicant should not be expected to come up with supporting documentation. He should be taken at his word, and if it looks like there's at least a reasonable possibility, a chance that he will be successful, then he passes the hurdle. Here, we actually have, we submit on this record that there is past persecution. Now, that doesn't necessarily mean in the reasonable fear context, as counsel was pointing out, that doesn't necessarily mean that we assume future persecution because we're not at that stage, but we submit that where there's evidence, where the record, the reasonable fear record shows past persecution, as we submit it does here, that that'll get over the reasonable fear hurdle. There's at least a reasonable chance, then, that the person will be able to show that he qualifies for withholding of removal. I have, unless your honors have other questions, I will rest. I just have one clarifying question. Are you saying the past persecution regarding his father and so forth is relevant to the finding of the subjective fear of future persecution? Is that your point? Well, so, first of all, if it's correct that he establishes past persecution, then at the merits hearing, well, at the merits hearing... No, sir, sir, sir, you're over time, and my question is really specific, right? At the credible fear, and just go to the reasonable fear stage, is your position that past persecution, the incident with his father is relevant to his own subjective future fear? Yes, and also that it's not only the father that suffered past persecution, but the family, including Mr. De La Cruz, suffered past persecution. I understand. Thank you for the clarification. Thank you, your honor. Thank you. Thank both counsel for your argument and briefing. The case of De La Cruz-Monterano v. Garland is submitted, and we're adjourned for the morning. This court for this session stands adjourned.
judges: Hawkins, McKeown, Christen